379 F.2d 694
 John Cecil KIRKENDOLL, Appellant,
v.
Marvin NEUSTROM and Tri-State Insurance Company, Appellees.
James C. KIRKENDOLL and Dorothy L. Kirkendoll, Appellants,
v.
Marvin NEUSTROM and Tri-State Insurance Company, Appellees.
 Nos. 8753, 8754.
 United States Court of Appeals Tenth Circuit.
 June 15, 1967.
 
 Edward L. Simmons, Kansas City, Mo., (Harlan Long, Mission, Kan., with him on the brief) for appellants.
 Leonard O. Thomas, Kansas City, Kan., (Lee E. Weeks, J. D. Lysaught, Robert H. Bingham, Ervin G. Johnston, Miles D. Mustain and George Maier, Jr., Kansas City, Kan., with him on the brief) for appellees.
 Before BREITENSTEIN, SETH and HICKEY, Circuit Judges.
 HICKEY, Circuit Judge.
 
 
 1
 This is a negligence action to recover damages for personal injuries sustained in a rear-end motor vehicle collision on the Kansas Turnpike. The jury returned a verdict for the defendant, after which the trial court denied plaintiff's motions for n.o.v. and a new trial. Appeal is taken from these orders.
 
 
 2
 The minor appellant was seriously and permanently injured when he ran into the rear-end of a heavily loaded truck traveling between 20 and 30 miles per hour up a slight grade in the right lane of the Kansas Turnpike. The left or passing lane of the turnpike was open and not obstructed in any way.
 
 
 3
 The basis of appellant's claim was negligence caused by the appellee's violation of a turnpike regulation establishing a minimum speed of 40 miles per hour for all vehicles on the turnpike. It was contended that the truck suddenly slowed down prior to the collision. Appellee defended on the ground that the proximate cause of the collision was the contributory negligence of appellant.
 
 
 4
 The Rules and Regulations for Use and Occupancy of the Turnpike provide in Section 10 thereof, 'Except for those sections which are inconsistent with or modified by the above rules and regulations, the provisions of Art. 5, 8-501 through 8-5134 (8-5, 134) of the General Statutes of Kansas, 1949,[1] and any amendments thereto shall apply on the turnpike system.' The regulations relied upon by both appellant and appellee are elaborations rather than modifications of sections of the Uniform Act. Therefore, the applicable sections of the Uniform Code must be considered.[2]
 
 
 5
 The Supreme Court of Kansas, while discussing the applicable sections, recognizes the difficult problem these cases present. 'A vehicle being operated at a subnormal speed may very well create a hazard upon a highway designed and customarily used to carry fast-moving traffic, even though no vehicle may be approaching upon the road from the opposite direction so as to prevent a passing of the slow-moving vehicle overtaken. Distances are deceptive at high speeds and mental calculations of braking distances and stopping times are apt to prove faulty at such higher velocities. This is not to say that one who miscalculates in such matters may not be guilty of negligence in so doing. It is but the recognition of human frailties in such regards that might well have impelled the legislature to enjoin any slow-moving traffic[3] which would result in hazard to life, limb or property, regardless of whether the traffic it impedes be approaching from the front or rear, or from both directions.' Angell v. Hester, 186 Kan. 43, 348 P.2d 1050, 1056 (1960).
 
 
 6
 ' The act[4] was passed for the protection of the general public and users of the streets and highways and not for the protection of immature, inexperienced and negligent drivers.' Allen v. Ellis, 191 Kan. 311, 380 P.2d 408, 413 (1963). Thus, Kansas has not adopted a strict liability rule applicable to rear-end collisions, but follows the ordinary rules of negligence.
 
 
 7
 Specific errors are alleged to have occurred during the trial which we now examine:
 
 
 8
 Appellant alleges error in admitting evidence of speed of his vehicle one mile before the collision on the grounds that it had no probative value, was not related to the cause of the accident and was hearsay.
 
 
 9
 The questioned evidence was a statement made to an investigating highway patrolman by a witness to the accident. The court allowed the patrolman to testify as to the statement. The remarks of the court at the time it ruled on the question show that the statement was considered to be a 'contemporaneous statement' under the exception to the hearsay rule contained in 60-460(d), 4 Kan.Stat.Ann., and the Kansas rule stated in Letcher v. Derricott, 191 Kan. 596, 383 P.2d 533, 539 (1963).
 
 
 10
 Rule 43, F.R.Civ.P., the cast of which is toward admissibility, not exclusion, Wright v. Wilson, 154 F.2d 616, 170 A.L.R. 1237 (3 Cir. 1946), provides: 'All evidence shall be admitted which is admissible * * * under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made.'
 
 
 11
 ' Rule 43(a) is designed to favor the reception of all the evidence 'which properly may be introduced in respect to the point in controversy.' This accords with 'the modern trend in the law of evidence favoring a wide rule of admissibility.' Rule 43(a) is 'a rule of admissibility, not a rule of exclusion'; * * *.' United States v. Featherston, 325 F.2d 539, 542 (10 Cir. 1963).
 
 
 12
 We cannot say the learned trial judge erroneously admitted the evidence under Rule 43 of the F.R.Civ.P.
 
 
 13
 Error is claimed because of the admission of the highway patrol report of the accident. Rule 43, F.R.Civ.P., recognizing the rule laid down in McElhaney v. Rouse, 197 Kan. 136, 415 P.2d 241, 248 (Kan.1966), sustains the admission.
 
 
 14
 Appellant complains that he should not have been impeached by his own witness's deposition which contained the testimony that appellant's car had a Thunderbird engine and a four-speed transmission. This testimony contradicted appellant's testimony that the car was equipped with a three-speed transmission. The admissibility of evidence to impeach a witness is tested by the question, 'Could the fact, as to which the prior self-contradiction is predicated, have been shown in evidence for any purpose independently of the self-contradiction?' III Wigmore on Evidence, 1020 at 692 (3rd ed. 1940); State v. Sweeney, 75 Kan. 265, 88 P. 1078 (1907). The issue was relevant as to speed and power and, therefore, could have been independently admitted to show the capacity of appellant's vehicle. There was no error in permitting the evidence.
 
 
 15
 Appellant believes he should have been allowed to question a highway patrolman concerning the point of impact of the two vehicles and whether appellant could have avoided the collision had appellee been traveling at a faster rate of speed. The transcript establishes that appellant was attempting to invade the province of the jury by non-expert testimony.
 
 
 16
 The court asked counsel if he was using the patrolman on cross-examination as an expert witness. Counsel finally replied in the negative, and the court sustained appellee's objection to the testimony.
 
 
 17
 We recognize the rule that under the proper circumstances skilled or expert opinion evidence is admissible. A non-expert witness, however, must ordinarily confine his testimony to matters within his actual knowledge, and cannot over objection be permitted to express his opinion upon the facts. See 66 A.L.R.2d 1069.
 
 
 18
 Issues five to nine stated in the appeal are related to the questions: Was appellee's truck overloaded when it entered the highway? Was the fact that he could not maintain a minimum speed on upgrades known to appellee? At the conclusion of the evidence, appellant moved to amend his pleading to include the issue of wanton negligence based upon the overload and driver's alleged knowledge. The trial court denied this motion.
 
 
 19
 The Supreme Court of Kansas has said, 'One cannot be held guilty of wanton conduct if the conduct occurs before the peril is discovered.' Partch v. Hubele, 188 Kan. 86, 360 P.2d 1104, 1106 (Kan.1961).
 
 
 20
 The pleadings, the evidence and the offers contained in the transcript disclose that appellee knew nothing of appellant's conduct or peril until after the crach occurred. Therefore, there is no evidence under which the rule stated could be applied in favor of appellant. The court correctly refused to submit the wanton negligence issue, and to permit the proposed amendment to the pleadings.
 
 
 21
 Appellant attacks the instructions. We have examined the instructions in detail. Our examination convinces us there was no prejudicial error in the instructions given by the court. The plaintiff's theory established by the evidence was completely presented to the jury.
 
 
 22
 Special interrogatories were answered by the jury:
 
 
 23
 '1. Was the Defendant, Marvin Neustrom, negligent? If you answer this question 'yes', state in what particular: (Answer) Yes. The law was being broken by the reduced speed even tho in certain instances enforcement is not required. * * *
 
 
 24
 2. If you answer the first question 'yes' state whether or not the Plaintiff, John Kirkendoll in Case No. KC-2072, could have avoided the collision by the performance of any of the duties required of him under the Instructions of the Court. If you answer this question 'yes' state in what manner: (Answer) Yes. He did not exercise such care as an ordinary person would exercise when confronted by a like emergency then existing * * * he failed to exercise the care of a reasonable careful person.'
 
 
 25
 A general verdict for the appellee was separately given.
 
 
 26
 It is alleged that the special interrogatories given to the jury were in error. No objection was made to the interrogatories at the time they were given or before the jury retired. 'In this light of the record, the question may not be raised for the first time on appeal.' St. Louis-San Francisco Ry. Co. v. Simons, 176 F.2d 654, 660 (10 Cir. 1949); Rule 51, F.R.Civ.P.
 
 
 27
 Appellant insists the general verdict cannot be sustained in view of the answers to special questions propounded by the interrogatories.
 
 
 28
 As indicated above, the answers to the special interrogatories found negligence on the part of both the appellee and appellant. Rule 49(b) F.R.Civ.P. as amended July 1, 1963, provides in part, 'When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.'The record reflects that after the special answers and verdict were read, the court asked if there was any reason why the jury should not be discharged. Both appellant and appellee answered in the negative. The jury was discharged. Under this rule, (49(b) F.R.Civ.P.), as well as by acquiescence of counsel in the action of the court, no reversable error occurred. Weber v. Brunswick Corporation, 368 F.2d 480, 482 (10 Cir. 1966); St. Louis-San Francisco Ry. Co. v. Simons, supra.
 
 
 29
 We also recognize the rules which are directed to harmonizing special interrogatories with the general verdict. 'It is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: 'Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 119, 83 S.Ct. 659, 6669 L.Ed.2d 618 (1963).
 
 
 30
 ' Ordinarily, where a question of inconsistency arises between findings made in answer to the special questions, and a general verdict, every reasonable presumption should be indulged in favor of the general verdict. A general verdict and special findings should always be harmonized if possible.' Baker v. Western Casualty & Surety Co., 164 Kan. 376, 190 P.2d 850, 855 (1948).
 
 
 31
 It is complained that the weight of the evidence does not support contributory negligence on the part of appellant. A trial court, in determining whether it will grant a motion for a directed verdict or for judgment n.o.v. should view the evidence in a light most favorable to the party against whom the motion is directed and give such party the benefit of all the inferences which the evidence reasonably supports, even though contrary inferences might reasonably be drawn therefrom and if the evidence and inferences, so viewed and considered, are of such a character that reasonable men in the exercise of a fair and impartial judgment may reach different conclusions, the motion should be denied. Miller v. Brazel, 300 F.2d 283, 286 (10 Cir. 1962); Kippen v. Jewkes, 258 F.2d 869, 873 (10 Cir. 1958).
 
 
 32
 An examination of all the evidence shows that reasonable men might disagree on whether appellant had his vehicle under control under all the existing circumstances. Therefore, we cannot say the jury finding of negligence on the part of appellant was against the weight of the evidence.
 
 
 33
 Having examined the merits of each issue raised by appellant, we conclude that the trial court did not abuse its discretion when it denied the motion n.o.v. and the motion for a new trial.
 
 
 34
 Affirmed.
 
 
 
 [1]
 Chapter 8, Art. 5, Kan.Stat.Ann., Uniform Act Regulating Traffic on Highways, 1 Kan.Stat.Ann. 8-501 et seq. (1964)
 
 
 [2]
 1 Kan.Stat.Ann. 8-532, 8-534 (1964)
 
 
 [3]
 The court is discussing 1 Kan.Stat.Ann. 8-534, supra note 2
 
 
 [4]
 Uniform Act Regulating Traffic on Highways, supra note 1